CENTER FOR DISABILITY ACCESS
Isabel Masanque, Esq., SBN 292673
Ray Ballister, Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Dennis Price, Esq., SBN 279082
<u>Mail</u>: PO Box 262490
San Diego, CA 92196-2490
<u>Delivery</u>: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Scott Johnson**, | **Case No**. |
| Plaintiff, | |
| v. | **Complaint For Damages And Injunctive Relief For Violations Of:** American's With Disabilities Act; Unruh Civil Rights Act |
| **AU Energy, LLC,** a Delaware Limited Liability Company; and Does 1-10, | |
| Defendants. | |

Plaintiff Scott Johnson complains of Defendants AU Energy, LLC, a Delaware Limited Liability Company; and Does 1-10 ("Defendants"), and alleges as follows:

**PARTIES:**

1. Plaintiff is a California resident with physical disabilities. Plaintiff is a level C-5 quadriplegic. He cannot walk and also has significant manual dexterity impairments. He uses a wheelchair for mobility and has a specially equipped van.

2. Defendant AU Energy, LLC owned the real property located at or about

Complaint

6490 Mack Rd., Sacramento, California, in August 2016.

3. Defendant AU Energy, LLC owned the real property located at or about 6490 Mack Rd., Sacramento, California, in September 2016.

4. Defendant AU Energy, LLC owned the real property located at or about 6490 Mack Rd., Sacramento, California, in October 2016.

5. Defendant AU Energy, LLC owned the real property located at or about 6490 Mack Rd., Sacramento, California, in November 2016.

6. Defendant AU Energy, LLC owned the real property located at or about 6490 Mack Rd., Sacramento, California, in December 2016.

7. Defendant AU Energy, LLC owned the real property located at or about 6490 Mack Rd., Sacramento, California, in January 2017.

8. Defendant AU Energy, LLC owned the real property located at or about 6490 Mack Rd., Sacramento, California, in February 2017.

9. Defendant AU Energy, LLC owns the real property located at or about 6490 Mack Rd., Sacramento, California, currently.

10. Defendant AU Energy, LLC owned the Shell gas station located at or about 6490 Mack Rd., Sacramento, California, in August 2016.

11. Defendant AU Energy, LLC owned the Shell gas station located at or about 6490 Mack Rd., Sacramento, California, in September 2016.

12. Defendant AU Energy, LLC owned the Shell gas station located at or about 6490 Mack Rd., Sacramento, California, in October 2016.

13. Defendant AU Energy, LLC owned the Shell gas station located at or about 6490 Mack Rd., Sacramento, California, in November 2016.

14. Defendant AU Energy, LLC owned the Shell gas station located at or about 6490 Mack Rd., Sacramento, California, in December 2016.

15. Defendant AU Energy, LLC owned the Shell gas station located at or about 6490 Mack Rd., Sacramento, California, in January 2017.

16. Defendant AU Energy, LLC owned the Shell gas station located at or

Complaint

about 6490 Mack Rd., Sacramento, California, in February 2017.

17. Defendant AU Energy, LLC owns the Shell gas station ("Gas Station") located at or about 6490 Mack Rd., Sacramento, California, currently.

18. Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

19. The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

20. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

21. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

22. Plaintiff has gone to the Gas Station on a number of occasions during the

3

relevant statutory period, including August 2016, September 2016, October 2016, November 2016, December 2016, January 2017, and February 2017.

23. The Gas Station is a facility open to the public, a place of public accommodation, and a business establishment.

24. Unfortunately, although parking spaces were one of the facilities specifically reserved for patrons, there were no compliant accessible handicap parking spaces available for persons with disabilities that complied with the Americans with Disability Act Accessibility Guidelines during plaintiff's visits.

25. The parking stall and access aisle for use by persons with disabilities are not level with each other. There are cross slopes of between 3.1% and 4.7%. These slopes are greater than that allowed by the law.

26. The Defendants had no policy or plan in place to make sure that the parking spaces reserved for persons with disabilities remained useable prior to plaintiff's visits.

27. The Defendants have no policy or plan in place to make sure that the parking spaces reserved for persons with disabilities remain useable currently.

28. Transaction counters are another one of the facilities, privileges, and advantages offered by Defendants to patrons of the Gas Station.

29. The transaction counter at the Gas Station store was more than 36 inches in height. In fact, the transaction counter, which is actually a drawer that an employee slides out during a transaction, is 42 inches high.

30. During plaintiff's transactions, he experience great difficulty using the sliding transaction drawer.

31. There was no lowered, 36 inch portion of the transaction counter at the Gas Station store for use by persons in wheelchairs.

32. Currently, the transaction counter at the Gas Station store is more than 36 inches in height.

33. Currently, there is no lowered, 36 inch portion of the transaction

Complaint

counter at the Gas Station store for use by persons in wheelchairs.

34. Plaintiff personally encountered these barriers.

35. These inaccessible conditions denied the plaintiff full and equal access and caused him difficulty and frustration.

36. Restrooms are also one of the facilities, privileges, and advantages offered by Defendants to patrons of the Gas Station.

37. Even though the plaintiff did not personally confront the barrier, the the plumbing underneath the sink is not wrapped to protect against burning contact.

38. The barriers existed during each of Plaintiff's visits in 2016 and 2017.

39. The plaintiff lives in the Sacramento area. He shops and patronizes local businesses on a regular basis. He personally encountered the barriers during his visits.

40. Plaintiff would like to return and patronize the Gas Station but will be deterred from visiting until the defendants cure the violations.

41. The defendants have failed to maintain in working and useable conditions those features required to provide ready access to persons with disabilities.

42. The violations identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.

43. For example, there are numerous paint/stripe companies that will come and stripe a level parking stall and access aisle and install proper signage on rapid notice, with very modest expense, sometimes as low as $300 in full compliance with federal and state access standards.

Complaint

44. Another common barrier removal project is modifying transaction counters to make a portion of the counter accessible. This is a simple construction task, well within the capabilities of any general contractor. The task can be completed easily and for a modest price.

45. Plaintiff is and has been deterred from returning and patronizing the Gas Station because of his knowledge of the illegal barriers that exist. Plaintiff will, nonetheless, return to the business to assess ongoing compliance with the ADA and will return to patronize the Gas Station as a customer once the barriers are removed.

46. Given the obvious and blatant violation, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to his disability. Plaintiff will amend the Complaint to provide proper notice regarding the scope of this lawsuit once he conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to his disability remedied. See *Doran v. 7-11*, 506 F.3d 1191 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to her disability removed regardless of whether he personally encountered them).

47. Additionally, on information and belief, the plaintiff alleges that the failure to remove these barriers was intentional because: (1) these particular barriers are intuitive and obvious; (2) the defendants exercised control and dominion over the conditions at this location and, therefore, the lack of accessible facilities was not an "accident" because, had the defendants intended any other configuration, they had the means and ability to make the change.

Complaint

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all Defendants.) (42 U.S.C. section 12101, et seq.)

48. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

49. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

    a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

    b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

    c. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals

Complaint

with disabilities. 42 U.S.C. § 12183(a)(2).

50. Under the 1991 Standards, parking spaces and access aisles must be level with surface slopes not exceeding 1:50 (2%) in all directions. 1991 Standards § 4.6.3. Under the 2010 Standards, access aisles shall be at the same level as the parking spaces they serve. Changes in level are not permitted. 2010 Standards 502.4. "Access aisle are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles." 2010 Standards § 502.4 Advisory.. No more than a 1:48 slope is permitted. 2010 Standards § 502.4.

51. Here the failure to provide level parking is a violation of the law.

52. In areas used for transactions where counters have cash registers and are provided for sales or distribution of goods or services to the public, at least one of each type shall have a portion of the counter which is at least 36 inches in length with a maximum height of 36 inches above the floor. 1991 Standards § 7.2(1). Under the 2010 Standards, where the approach to the sales or service counter is a parallel approach, such as in this case, there must be a portion of the sales counter that is no higher than 36 inches above the floor and 36 inches in width and must extend the same depth as the rest of the sales or service counter top. 2010 Standards § 904.4 & 904.4.1.

53. Here, no such accessible counter has been provided in violation of the ADA.

54. Hot water and drain pipes under lavatories must be insulated or otherwise configured to protect against contact. 1991 Standards § 4.19.4; 2010 Standards §606.5.

55. Here, the failure to wrap the plumbing underneath the sink is a violation of the ADA.

56. A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily

accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

57. Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the law.

58. Given its location and options, plaintiff will continue to desire to patronize the Gas Station but he has been and will continue to be discriminated against due to the lack of accessible facilities and, therefore, seeks injunctive relief to remove the barriers.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code § 51-53.)

59. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

60. Because the defendants violated the plaintiff's rights under the ADA, they also violated the Unruh Civil Rights Act and are liable for damages. (Cal. Civ. Code § 51(f), 52(a).)

61. Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. (Cal. Civ. Code § 55.56(a)-(c).)

62. Although the plaintiff was markedly frustrated by facing discriminatory barriers and this frustration possibly qualifies as an emotional distress injury, even manifesting itself with minor and fleeting physical symptoms, the plaintiff does not value this very modest frustration and physical personal injury greater than the amount of the statutory damages.

Complaint

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000.

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code §§ 52.

Dated: January 25, 2018        CENTER FOR DISABILITY ACCESS

By: _____
Isabel Masanque, Esq.
Attorney for plaintiff

Complaint